Downey, Judge,
delivered the opinion of the court:
The transactions out of which this action grows were the furnishing by the plaintiff to the defendant of large quantities of tomato catsup on six several Navy orders, the numbers and dates of which and the deliveries thereunder are set out in the findings and need not be repeated here. The orders were in the same general form as those considered by the court in Federal Sugar Refining Co., No. B-147, decided January 19, 1925, 60 C. Cls. 184; Consolidation Coal Co., No. A-262, decided January 26, 1925, and on motion for new trial, April 20, 1925, 60 C. ds. 608; and Pocahontas Fuel Co., No. C-739, decided this day, ante, p. 231.
Tentative prices were fixed which were in accordance with prices quoted by plaintiff, and the orders were under sub-paragraph (b) reading as follows:
“(5) As it is impracticable to now determine a reasonable and just compensation for the material to be delivered, the fixing of the price will be subject to later determination. You are assured of a reasonable profit under this order; and as an advance payment you will be paid the unit prices stated hereon, with the understanding that such advance payment will not be considered as having any bearing upon the price to be subsequently fixed. Any difference between the amount of such advance payment and the amount finally determined upon as being just and reasonable will be paid to you or refunded by you, as the case may be. The unit price determined herein will not prejudice any future price determination or be considered as a precedent in determin *282 ing such increases or decreases as may be later decided upon as proper.”
These orders were all formally accepted in writing by the plaintiff.
The prices first tentatively fixed were paid to the plaintiff subsequent to May 24, 1918, when the final delivery was made, but on May 14, 1919, the Paymaster General of the Navy modified and reduced the prices and called on the plaintiff for a refund. The plaintiff declined to accept these modified prices and did not make refund, but entered into negotiations with reference to the matter, pending which the Comptroller of the Treasury settled other accounts of the plaintiff, as to which there was no controversy, and from the amounts due the plaintiff thereon deducted the alleged overpayment, being the difference between the amount paid in accordance with the first tentative prices and the price as modified May 14, 1919.
Subsequently, in May, 1922, after investigations by the Navy Department as to .the conditions attendant upon the filling of these orders, the Paymaster General proposed other prices, higher than those fixed on May 14,1919, which the plaintiff agreed to accept upon certain conditions with reference to interest on money withheld. These negotiations resulted in modified orders dated May 23, 1922, on this new basis, which were accepted by the plaintiff, and the accepted orders were sent for settlement to the Comptroller General, who declined to reopen the case. Being then referred to the Secretary of the Navy, the Assistant Secretary held that there was no authority to then adjust the matter because of the limitations under the acts of March 4 and June 15, 1917. This suit was then brought.
The detailed consideration of these orders and their effect seems unnecessary in view of the fact that practically the same order has had the attention of the court in the cases cited. These orders and their acceptance clearly established contractual relations between the parties, and the basis of payment is the question for determination.
The prices stated were tentative, subject to increase or decrease. The only suggestion in subparagraph (b) as to the final price is that “you are assured of a reasonable *283 profit.” There are some reports in the files as to investigations made of costs and profits, but these matters have not been made the subject of any direct proof. The prices were in abeyance and the correct measure of plaintiff’s compensation is the fair market value of its product at the time and place of delivery. This value has been determined and stated in the findings. It coincides with prices proposed by plaintiff and incorporated in the defendant’s original orders.
Plaintiff’s acceptance of the prices stated on May 23, 1922, was evidently by way of compromise of the controversy and involved, in addition to those prices, certain allowances as interest on moneys withheld. This settlement was never consummated, but was held to be a nullity, and plaintiff is not bound thereby.
We are asked to award interest “ as a part of the just compensation provided by the contract.” The argument is ingenious and might have force were it not for the statute which upon a claim of this sort founded upon contract precludes the inclusion of interest. (Sec. 111 Judicial Code. Amended, 42 Stat. 316.)
The amount to which the plaintiff was entitled was the amount first paid, and the judgment is, therefore, for the amount deducted from other bills of the plaintiff as an alleged overpayment. We have directed judgment accordingly.
Graham, Judge; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.